```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION, | 1:20-cv-05872-NLH-AMD |
| Plaintiff, | **OPINION** |
| v. | |
| KEVIN FITZPATRICK and THOMAS OLSEN, | |
| Defendants. | |
| KEVIN FITZPATRICK, | |
| Cross-claim Plaintiff, | |
| v. | |
| THOMAS OLSEN, | |
| Cross-claim Defendant. | |

**APPEARANCES**:

DAVID J. WOOLF
MATTHEW A. FONTANA
FAEGRE DRINKER BIDDLE & REATH LLP
ONE LOGAN SQUARE
SUITE 2000
PHILADELPHIA, PA 19103-6996

   *On behalf of Plaintiff*

GARY NEIL ELKIND
AMANDA ELIZABETH HOPKINS
ELKIND & DIMENTO, PA
2090 EAST ROUTE 70
CHERRY HILL, NJ 08003

   *On behalf of Defendant/Cross-claim Plaintiff Kevin Fitzpatrick*

SANDHYA M. FELTES
KAPLIN, STEWART, MELOFF, REITER & STEIN, PC
UNION MEETING CORPORATE CENTER
910 HARVEST DRIVE
BLUE BELL, PA 19422-0765

*On behalf of Defendant/Cross-claim Defendant Thomas Olsen*

**HILLMAN, District Judge**

This matter concerns claims by Plaintiff, Freedom Mortgage Corporation, against two of its former employees, Defendants Kevin Fitzpatrick and Thomas Olsen. Pending before the Court is Olsen's motion to dismiss Plaintiff's state law claim against him for lack of subject matter jurisdiction.[1] For the reasons expressed below, the Court will deny Olsen's motion.

## BACKGROUND

The preliminary statement in Plaintiff's amended complaint summarizes its claims against Defendants:

> When Defendant Thomas Olsen no longer wished to work for Freedom Mortgage, he chose to go to a competing business, Carrington Mortgage ("Carrington"). While he had the opportunity to leave quietly, he instead solicited other Freedom Mortgage employees to join him, and together, while still employed by Freedom Mortgage, they participated in a common scheme designed to work against Freedom Mortgage's interests and obtain an unfair competitive advantage for themselves and their new company.
>
> Defendant Olsen coordinated his poaching scheme with Defendant Fitzpatrick, and the two worked in tandem to

---

[1] Olsen's instant motion is directed at Plaintiff's amended complaint. Also pending is Olsen's motion to dismiss Plaintiff's original complaint. (Docket No. 5.) The Court will deny that motion as moot.

2

>    recruit a Freedom team and take it to Carrington.  Even
>    though Defendant Fitzpatrick had signed an agreement with
>    Freedom Mortgage that restricted his ability to work for a
>    competing company for a limited period of time, he chose to
>    join Defendant Olsen in working for Carrington anyway.
>    Like Defendant Olsen, Defendant Fitzpatrick was not
>    satisfied with a quiet exit.  He bragged to Carrington that
>    he would be able to "gather more momentum" than Defendant
>    Olsen in "grabbing" good loan advisors to come over to the
>    competitor with him.  Defendant Fitzpatrick then, working
>    with Defendant Olsen, proceeded to solicit other Freedom
>    Mortgage employees to leave, again in direct violation of
>    agreements he had voluntarily entered into with Freedom
>    Mortgage that prohibited such solicitation.
>
>    But Defendant Fitzpatrick was not finished. Not only
>    did he attempt to poach Freedom Mortgage's employees, but
>    he also plundered Freedom Mortgage's intellectual property
>    and trade secrets in order to bring them with him to
>    Carrington.  During the week prior to Defendant Fitzpatrick
>    tendering his resignation, he transferred hundreds of files
>    from his work computer to his personal e-mail address.
>    These files contained all sorts of confidential and
>    proprietary information, including critical customer data
>    and strategy documents.  Defendant Fitzpatrick unlawfully
>    stole Freedom Mortgage confidential information and
>    impermissibly solicited Freedom Mortgage employees to
>    endear himself to Carrington, ignoring the impact on
>    Freedom Mortgage and the wrongfulness of his actions
>    generally.

(Docket No. 11 at 1-2.)

Over fourteen additional pages, Plaintiff details Defendants' alleged scheme to obtain an unfair competitive advantage for themselves and their new company.  (See Docket No. 11 at 4-18.)  More specifically as to Olsen, Plaintiff alleges that while he was still an employee of Plaintiff, "Olsen engaged in a subversive campaign to convince other employees to go to

3

Carrington with him.  He solicited these employees with the purpose of poaching Freedom Mortgage's best employees and giving his new employer, Carrington, an unfair competitive advantage over Freedom Mortgage."  (Id. at 11.)  Plaintiff claims that Olsen used his senior position and supervisory authority to successfully recruit three employees from Plaintiff to Carrington.  (Id.)

Based on these allegations, Plaintiff has asserted five counts against Defendants:  Count I - Breach of Contract against Fitzpatrick; Count II - Breach of Employee Duty of Loyalty against Fitzpatrick and Olsen; Count III - Misappropriation of Trade Secrets under the Defend Trade Secrets Act of 2016 against Fitzpatrick; Count IV - Misappropriation Of Trade Secrets under the New Jersey Trade Secrets Act against Fitzpatrick; Count V - Violation of the New Jersey Computer Related Offenses Act against Fitzpatrick.

Olsen has moved to dismiss Plaintiff's count against him for lack of subject matter jurisdiction.  Olsen argues that this Court must decline to exercise supplemental jurisdiction over Plaintiff's sole state law claim against him because it does not arise out of a common nucleus of operative facts with Plaintiff's federal claims against Fitzpatrick, which is the basis for this Court's subject matter jurisdiction over the

entire action, and it is more appropriately tried in a separate state court proceeding.  Plaintiff has opposed Olsen's motion.

## DISCUSSION

**A.    Subject matter jurisdiction**

Plaintiff's complaint asserts that this Court has subject matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

**B.    Standard for a Rule 12(b)(1) Motion to Dismiss**

A challenge to this Court's subject matter jurisdiction is determined pursuant to Fed. R. Civ. P. 12(b)(1).  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  Rule 12(b)(1) motions are either facial or factual challenges.  CNA v. United States, 535 F.3d 132, 140 (3d Cir. 2008).  A facial attack concerns the sufficiency of the pleadings, whereas a factual attack is a dispute over the existence of certain jurisdictional facts alleged by the plaintiff.  Id. (citing United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).

In deciding a motion that attacks the complaint on its face, the court must accept the allegations in the complaint as true.  Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); Gould Elecs., 220 F.3d at 176 ("In

reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.").

If the motion attacks the facts supporting jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. The plaintiff will have the burden of proof that jurisdiction does in fact exist. Id.

Here, Olsen has asserted a facial attack to Plaintiff's claim against him. As such, the Court accepts the allegations in the complaint as true and utilizes the standard for dismissal under Rule 12(b)(6). Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357–58 (3d Cir. 2014).

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff

will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

**C.  Analysis**

Under 28 U.S.C. § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Where there is original jurisdiction, "the district courts shall [also] have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Section 1367 combined older notions of pendent jurisdiction and ancillary jurisdiction, and under § 1367, which

codified many of the principles enunciated in Gibbs, a district court may exercise supplemental jurisdiction where state-law claims share a "common nucleus of operative fact" with the claims that support the district court's original jurisdiction. De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 307-08 (3d Cir. 2003). Supplemental jurisdiction promotes "judicial economy, convenience and fairness to litigants." Id. (quoting Gibbs, 383 U.S. at 726); see also In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation, 911 F.3d 666, 672 (3d Cir. 2018) (citing City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-65 (1997) (explaining that "the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."'" (quoting Gibbs, 383 U.S. at 725)).

Thus, the test for determining whether a court should exercise supplemental jurisdiction over a state law claim requires a finding that:

(1) "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court";

(2) "[t]he state and federal claims must derive from a

common nucleus of operative fact"; and

(3) "considered without regard to their federal or state character, a plaintiffs' claims are such that he would ordinarily be expected to try them all in one judicial proceeding." Williams v. Board of Education of Paterson, 2017 WL 3131974, at *4-5 (D.N.J. 2017) (quoting Gibbs, 383 U.S. at 725).

Here, jurisdiction over Olsen and Plaintiff's state law claim for a breach of the duty of loyalty against him may only be premised on § 1367 in connection with Plaintiff's federal law claims against Fitzpatrick because all the parties are citizens of New Jersey.[2]  Olsen argues that this Court should not exercise supplemental jurisdiction under § 1367 over Plaintiff's state law claim against him because the elements and proofs to support such a claim differ significantly from the elements and proofs needed to prove Plaintiff's federal trade secret act claim against Fitzpatrick.  Olsen argues that Plaintiff's claim against him arises out of employment related actions while Plaintiff's trade secret claims against Fitzpatrick require the assessment of facts not relevant to Olsen.  Olsen contends that Plaintiff's claims against the two defendants do not rise from a

---

[2] Thus, subject matter jurisdiction under 28 U.S.C. § 1332(a) is not available.

9

common nucleus of operative fact, and proceeding with Plaintiff's claim against him with Plaintiff's claims against Fitzpatrick would prejudice him and not support judicial economy.

As argued in opposition by Plaintiff, Olsen's argument presents a too narrow view of Plaintiff's claims against him and Fitzpatrick. Plaintiff alleges in detail how Olsen and Fitzpatrick engaged in a scheme to poach Plaintiff's employees and Plaintiff's confidential business information for the benefit of their new employer, which is Plaintiff's competitor. Plaintiff claims that both Olsen and Fitzpatrick violated the duty of loyalty to Plaintiff by their actions. Even though Fitzpatrick allegedly took additional steps by forwarding from his work email address to his personal email address hundreds of documents that contained Plaintiff's confidential information, which alleged actions serve as the basis for Plaintiff's federal claim against Fitzpatrick, those actions are part of the overall scheme allegedly perpetuated by both Olsen and Fitzpatrick.

The discovery process into Olsen's participation in this alleged scheme is part and parcel to Fitzpatrick's actions, and both defendants are charged with breaching their duty of loyalty, which count requires the assessment of the same elements for each defendant. Olsen's alleged actions are also

integral to the assessment of Fitzpatrick's alleged federal trade secret violations because Fitzpatrick allegedly committed those violations to further the common goal of taking Plaintiff's employees and confidential business information for the benefit of their new employer.[3]  Simply because Plaintiff has not pleaded that Olsen violated any federal law does not mean that Plaintiff's claims against Olsen and Fitzpatrick do not "form part of the same case or controversy."

    Contrary to Olsen's position, the dismissal of Plaintiff's claim against him would not result in judicial economy, and it would prejudice not only Plaintiff, but Olsen himself as well.  If this Court dismissed the claim against Olsen and Plaintiff's only recourse was to refile that claim against Olsen in state court, the parties would be forced to litigate in two different forums regarding the same alleged scheme.  In that situation, Olsen would not be a defendant here, but he would be required to participate in discovery as a witness relative to Plaintiff's

---

[3] For example, Plaintiff's amended complaint alleges that at Olsen's suggestion, Olsen and Fitzpatrick hatched a plan to recruit their Freedom team members for their benefit and the benefit of their new employer.  As part of this plan, Olsen aggressively solicited his team.  Also as part of this plan, Fitzpatrick solicited his team and misappropriated key information that Olsen and Fitzpatrick would need to maximize their team's success their new employer, including Plaintiff's unique sales scripts and pricing information.  (See Amended Complaint at ¶¶ 22, 23, 26, 30, 33, 40-50.)

11

claims against Fitzpatrick, while at the same time Fitzpatrick would need to do the same in state court. Duplicative litigation such as this obviously does not promote the economy of judicial resources or serve to benefit any of the parties.[4]

Section 1367 "'does not permit courts to take jurisdiction over tangentially related claims.'" De Asencio, 342 at 308 (quoting Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283, 303 (3d Cir. 1998)). Accepting as true the allegations in Plaintiff's complaint, however, Plaintiff's state law claim against Olsen is not tangential to the controversy that forms the basis for federal question jurisdiction. Plaintiff's claim against Olsen and the facts underlying that claim are essential to all of Plaintiff's claims - federal and state - that assert a common scheme between Olsen and Fitzpatrick to take Plaintiff's employees and confidential information to a competitor. The Court's exercise of supplemental jurisdiction over Plaintiff's state law claim meets all of the elements of the Gibbs test, and serves the purposes of § 1367 - judicial economy, convenience,

---

[4] As also pointed out by Plaintiff, Fitzpatrick has filed a cross-claim against Olsen for indemnification and contribution. (Docket No. 15.) This also supports that finding that Plaintiff's claims against Olsen arise from a common nucleus of operative facts.

and fairness to litigants.[5]  Gibbs, 383 U.S. at 726.

---

[5]  The Court notes that Olsen's motion raises the issue of this Court's exercise of supplemental jurisdiction in a procedural posture not often presented to courts for consideration - i.e., where in the beginning stages of the case while the original jurisdiction claim - here, the federal trade secret violation count against Fitzpatrick - is viable and pending, the consideration of whether the sole claim against a co-defendant based only on state law is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" under § 1367(a).  The Court's independent research has revealed that the issue of whether to exercise supplemental jurisdiction typically arises in the context of where all federal claims have been dismissed.  See 28 U.S.C. § 1367(c)(3) (providing that "a district court may decline to exercise supplemental jurisdiction over [claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy] when . . . the district court has dismissed all claims over which it has original jurisdiction.").  Less often but not uncommon is where: (1) the case presenting state and federal claims is removed from state court based on the federal claims, but the state law part of the case is remanded because the state law claims predominate over the federal claims, or they present novel issues of state law; or (2) the case is filed under § 1331 originally in federal court, but the state law claims are dismissed because the state law claims predominate or are novel.  See 28 U.S.C. § 1367(c)(1), (2).  The issue also arises regularly in the context of whether a court should entertain a counterclaim under § 1367(a), and such a situation often touches on whether the counterclaim is part of the "same case and controversy" as the main claims.  Another instance where courts consider their supplemental jurisdiction over state law claims is where there are viable pending federal claims against all the defendants, but the defendants seek to dismiss additional state law claims against them because they are unrelated to the "same case and controversy" of the entire action.  Although the case law in this circuit is scarce regarding the precise context in which this Court must assess the propriety of exercising supplemental jurisdiction over Plaintiff's state law claim against Olsen, the standards and analysis applied in the other procedural postures outlined are equally applicable here.  See, e.g., Williams v. Board of Education of Paterson, 2017 WL 3131974, at *4 (D.N.J. 2017) (in

Consequently, the Court will deny Olsen's motion to dismiss Plaintiff's claim against him.[6]  An appropriate Order will be entered.

Date: January 15, 2021              s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

---

a case originally filed in the district court under § 1331 for the plaintiff's federal claims and supplemental jurisdiction under § 1367 for the plaintiff's state law claims, denying a defendant's request that the court decline to exercise supplemental jurisdiction over the plaintiff's state law only claims against that defendant because the facts were so closely intertwined that the case may be said to constitute a single case or controversy, such that supplemental jurisdiction was appropriate, and the state law claims did not otherwise predominate over the federal claims).

[6] The denial of Olsen's motion is without prejudice.  As noted, *supra* note 5, § 1367(c) provides that "a district court may decline to exercise supplemental jurisdiction over [claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy] when: (1) The claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction."  No party has raised such arguments and factor (3) clearly does not apply at this time.